# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Woody Gahiti,

Petitioner

v.

Todd Blanche, et al.,

Respondents

Case No.: 2:26-cv-02263-JAD-EJY

**Order Granting Habeas Petition and Closing Case**

[ECF No. 7]

Petitioner Woody Gahiti is a Haitian citizen who was paroled into the United States and granted Temporary Protected Status (TPS) in 2024. He was detained by Immigration and Customs Enforcement (ICE) officials in June 2026, before the Department of Homeland Security (DHS) terminated TPS protections for Haitians the following month. Gahiti seeks a writ of habeas corpus and release from custody, contending that immigration officials lacked authority to detain and remove him while he was protected by TPS. The government responds that Gahiti was detained under 8 U.S.C. § 1225(b)(2) because he was paroled into the country.

I grant Gahiti's petition because the government hasn't shown that it had statutory authority for his removal. Gahati's TPS status should have prevented his arrest, and the government's § 1225(b)(2) arguments are unavailing. The only plausible authority for his pre-removal detention is § 1226(a), which allows noncitizens to seek bond, but Gahiti was not given the opportunity to meaningfully seek that relief during the almost four months that he has been detained, so I find that the appropriate remedy is to order his release.

## Background

Petitioner Woody Gahiti is a Haitian citizen who was paroled into the United States at the Texas border on July 2, 2023.[1] He was then issued a notice to appear in immigration court six months later[2] and granted TPS on November 25, 2024.[3] On May 11, 2026, Gahiti was arrested by local law enforcement in Reno, Nevada, on charges of child abuse or neglect.[4] ICE filed an immigration detainer and took him into federal custody in early June.[5] DHS revoked TPS status for Haitians effective July 27, 2026.[6]

## Discussion

### A. This court has habeas jurisdiction over Gahiti's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[7] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[8]

---

[1] ECF No. 7-1 at 3.

[2] ECF No. 7-4.

[3] ECF No. 7-1 at 3.

[4] *Id.* at 3.

[5] ECF No. 7 at 5 (stating that Gahiti was transferred to ICE detention on June 6, 2026); ECF No. 8 at 1 (stating that Gahiti was transferred to ICE detention on June 5, 2026).

[6] ECF No. 7 at 5 (citing *Update on Termination of Temporary Protected Status for Haiti*, USCIS (July 24, 2026), https://www.uscis.gov/i-9-central/form-i-9-related-news/policy-related-news-archive/update-on-termination-of-temporary-protected-status-for-haiti-release-july-24-2026).

[7] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2).

[8] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Gahiti's detention was not authorized because he had a valid TPS grant.**

The parties don't dispute that Gahiti had a valid TPS grant when he was arrested. 8 U.S.C. § 1254a(d)(4) unambiguously states that a noncitizen "provided temporary protected status . . . shall not be detained by the Attorney General on the basis of the [noncitizen's] immigration status in the United States." Gahiti was detained by ICE based on the government's belief that he did not possess "valid immigration documents allowing him to be or remain in the United States legally," so he was detained based on his immigration status. The government does not respond to, and thus by its silence concedes, that Gahiti's detention was unauthorized because he had a valid TPS grant at the time of his arrest.

**C. Section 1225(b)(2) does not apply to Gahiti because the government's interpretation of that provision is incorrect.**

The government contends that Gahiti is instead subject to detention under 8 U.S.C. § 1225(b)(2). It acknowledges that its interpretation of that statute has been rejected by the Ninth Circuit for some detainees,[9] but it argues that the mandatory-detention scheme in that statute still applies to Gahiti because he was paroled into the United States.[10] It relies on the Board of Immigration Appeals (BIA)'s decision in *Matter of Q. Li*[11] for the proposition that, when a noncitizen's parole is terminated, he must be returned to mandatory detention.[12] 8 U.S.C. § 1182(b)(5)(A) grants ICE officials the ability to grant parole to arriving noncitizens "for urgent humanitarian reasons or significant public benefit," but it provides that such parole must "not be regarded as an admission of the [noncitizen] and when the purposes of such parole [have]

---

[9] *See Rodriguez Vasquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026).

[10] ECF No. 8 at 5–7.

[11] *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025).

[12] ECF No. 8.

been served the [noncitizen must] forthwith return or be returned to the custody from which he was paroled and thereafter his case [must] continue to be dealt with in the same manner as that of any other application for admission to the United States."[13]

There are several holes in the government's argument. First, the government hasn't shown that Gahiti's parole was indeed terminated or revoked under the procedures described in 8 C.F.R. § 212.5, which require notice of termination to the noncitizen.[14] It attempts to argue that, because Gahiti was issued a notice to appear for immigration proceedings on the same day his parole was granted, his parole and termination of parole all happened on July 2, 2023.[15] But that ad hoc argument makes no sense—if Gahiti's parole was immediately revoked after it was granted, § 1182(b)(5)(A) would have required that Gahiti be immediately returned into custody. He was not. Plus, there is no indication that Gahiti was ever in custody under § 1225(b), so it is not clear that he must be "returned" to that custody under § 1182(b)(5)(A).[16] And "though § 1182(d)(5)(A) refers to custody, there is 'nothing in [its] text that affirmatively authorizes detention.'"[17] Because that statute is "not an independent authority to detain parolees,"[18] the

---

[13] 8 U.S.C. § 1182(b)(5)(A).

[14] 8 C.F.R. § 212.5(e)(2)(i).

[15] ECF No. 8 at 6.

[16] *See Lubamba v. Stamper*, 2026 WL 632670, at *5 (D. Me. Mar. 6, 2026) (holding that a petitioner who received humanitarian parole through the CBP One app was not initially detained under § 1225(b)(2)); *see also Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 89–94 (D.D.C. 2025) (rejecting the government's § 1225(b) arguments under similar circumstances).

[17] *Fernandez v. Blanche*, 2026 WL 1493877, at *2 (D. Nev. May 28, 2026) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)).

[18] *Hernandez Villasmil v. Blanche*, 2026 WL 1235068, at *5 (N.D.N.Y. May 5, 2026). I further incorporate by reference Chief District Judge Andrew P. Gordon's well-reasoned rejection of the government's reliance on *Matter of Q. Li* in *Moya v. Blanche*, 2026 WL 1481604, at *4–8 (D. Nev. May 27, 2026).

government must rely on some other statutory authority to justify Gahiti's continued detention. And as the Ninth Circuit held in *Rodriguez Vasquez v. Bostock*,[19] § 1225(b)(2) cannot supply that authority because that statute mandates detention only for noncitizens present at a border and presently seeking admission. Those qualifiers do not apply to Gahiti. So I conclude that the only statute that could authorize Gahiti's detention is § 1226(a).

## D. Gahiti's detention is governed by § 1226(a), and he is entitled to certain due-process procedures that he has not received.

### *1. Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.*

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[20] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[21]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[22] At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into

---

[19] *Rodriguez Vasquez*, 183 F.4th at 1164.

[20] 8 U.S.C. §§ 1226(a)(1)–(2).

[21] 8 C.F.R. § 236.1(c)(8).

[22] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[23] The noncitizen may be represented by counsel and can submit evidence in his favor.[24] He may also appeal the decision to the BIA.[25] A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material change in circumstances.[26] He can appeal the IJ's decision of that redetermination hearing to the BIA too.

### *2. Noncitizen detainees are also entitled to due process of law in immigration proceedings.*

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[27] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[28] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[29] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[30] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the

---

[23] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[24] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[25] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

[26] 8 C.F.R. § 1003.19(e).

[27] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[28] *Id.* at 1206.

[29] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[30] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[31]

***3. Gahiti's four-month detention without due process warrants his release.***

Gahiti contends that he was not given adequate due-process protections to challenge his detention. The parties agree that Gahiti was not given any bond hearings. Nor was Gahiti given any notice that his parole was revoked or terminated, and he was not given an opportunity to challenge any apparent parole revocation.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[32] Gahiti has been detained for about four months, which is not presumptively a prolonged detention. But when evaluating Gahiti's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[33] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[34] Here, Gahiti has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond. I find that the deprivation of Gahiti's liberty interest weighs in favor of relief.

---

[31] *Mathews*, 424 U.S. at 335 (cleaned up).

[32] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

[33] *Rodriguez Diaz*, 53 F.4th at 1208.

[34] *Id.*

I also conclude that there is a substantial risk of erroneous deprivation of Gahiti's interest based on the government's reliance on § 1225(b)(2)(A)'s mandatory-detention scheme. Throughout the four months that Gahiti has been detained, he has had no opportunity to contest his detention. I find that Gahiti suffers a severe risk of erroneous deprivation of his liberty interest absent habeas relief, which also weighs in favor of granting his petition.

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[35] But I cannot conclude that the government's interests outweigh the petitioner's in this case. The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody. Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations Gahiti has suffered.[36]

## Conclusion

IT IS THEREFORE ORDERED that petitioner Woody Gahiti's amended petition for a writ of habeas corpus **[ECF No. 7] is GRANTED**. **Petitioner Woody Gahiti must be released from detention within four days of this order**.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Gahiti's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Gahiti's release was effectuated.

---

[35] *Id.*

[36] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

IT IS FURTHER ORDERED that **the respondents are enjoined from re-detaining Gahiti unless he is given a pre-deprivation, individualized bond hearing under § 1226(a).**

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Nevada Southern Detention Center in Pahrump, Nevada and **CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
October 8, 2026